# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANTHONY MASON,                                    Civil Action No. 1:07-cv-1020
     Petitioner,

                                  Spiegel, J.
     vs.                                             Black, M.J.

TIMOTHY BRUNSMAN, WARDEN,                        **REPORT AND**
     Respondent.                                **RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2254. This case is now before the Court upon the petition (Doc. 1), respondent's

return of writ and exhibits thereto (Doc. 8), and petitioner's traverse brief. (Doc. 11).


## I.  PROCEDURAL HISTORY

This case involves the following facts, as summarized by the Twelfth District Ohio Court of

Appeals:[1]

> {¶ 2} The evidence presented by the state at appellant's jury trial reveals the
> following:  In February 2003, Angela Tuerley began living with her mother, Janie
> Tuerley, in an apartment on Northwest Boulevard, in the city of Hamilton.  Prior to
> that, Angela cohabited with appellant in Elsmere, Kentucky.
>
> {¶ 3} On February 20, 2003, Angela obtained a domestic violence protection order
> against appellant in the District Court of Kenton County, Kentucky.  The order
> restrained appellant from having any contact or communication with Angela, her
> family, and her house-hold.
>
> {¶ 4} On March 18, 2003, Angela swore out an affidavit stating that on March 15,
> 2003, appellant had violated the protection order by calling her on the telephone.
> The affidavit also states that Angela believed appellant had vandalized her vehicle.
> A hearing to determine whether appellant had in fact violated the order was
> scheduled for May 14, 2003.

---

[1]  The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

{¶ 5} On the afternoon of May 13, 2003, appellant went to Janie and Angela's apartment complex on Northwest Boulevard. He spoke with Janie in the parking lot and indicated to her that he owed Angela some money, and that he was there to give it to her. Janie offered to take the money, but appellant insisted on delivering it himself.

{¶ 6} Janie continued walking up to her apartment and appellant followed behind her. Upon reaching the entrance, Janie opened the door four or five inches and called to Angela. Appellant then forced his way into the apartment by knocking Janie to the floor. Angela, responding to her mother's call, came down the hallway from the bedroom and yelled out appellant's name. Appellant pulled out a gun, pointed it at Angela, and a struggle ensued.

{¶ 7} As Angela and appellant fought for control of the gun, Janie attempted to get up from the floor to help her daughter. Appellant hit her on the back of the head with the gun, however, knocking her back to the ground. Appellant was then able to overpower Angela and force her to her knees, holding her down with one hand and holding the gun with the other. He then fired two shots at the back of Angela's head. One bullet entered her brain and the other entered appellant's hand. When the shots were fired, Angela slumped to the ground; Janie began screaming for help; and appellant fled the apartment.

{¶ 8} A neighbor called 9-1-1, and the police responded. As part of that response, Sergeant Ervin of the Covington Police Department was dispatched to the home of appellant's mother. Sergeant Ervin located appellant there, and noticing the injury to appellant's hand, offered to take him to the hospital. Appellant voluntarily accepted the offer.

{¶ 9} While receiving treatment at the hospital, appellant was interviewed by Detective Richard Webster of the Covington Police Department, and then by Jim Calhoun of the Hamilton Police Department. In taped statements to both detectives, appellant indicated that all his actions in the apartment were in self-defense. He stated that he did not shoot anyone and that his injury occurred when he raised his hand to protect himself. When medical personnel finished attending to appellant's injured hand, he was placed under formal arrest.

(Doc. 8, Exh. 13 at 1-4).

The 2003 Term of the Butler County Grand Jury indicted petitioner on one count of aggravated murder as defined in Ohio Rev. Code § 2903.01(B), with three specifications; one count of aggravated burglary as defined in Ohio Rev. Code § 2911.11(A)(2), with a specification; and one count of felonious assault with a specification as defined in Ohio Rev. Code § 2903.11(A)(2). (Doc. 8, Exh. 1).

The case proceeded to a jury trial and on April 23, 2004, the trial court granted petitioner's motion for a judgment of acquittal on specification 2 of Count 1 of the indictment (purposeful killing of a witness in a criminal proceeding). (Doc. 8, Exh. 2). On April 26, 2004, the jury returned a finding of guilty on all the remaining charges. (Doc. 8, Exh. 3). Petitioner was sentenced to life imprisonment without parole for aggravated murder,[2] ten years imprisonment for aggravated burglary, seven years imprisonment for felonious assault, and two sentences of three years imprisonment on the weapons specifications to Counts 1 and 3, all terms to be served consecutively. (Doc. 8, Exh. 4). Petitioner was also sentenced to a term of three years imprisonment on the specification to Count 2 to be served concurrent to the specification in Count 1. *Id.*

With the assistance of counsel, petitioner appealed to the Ohio Court of Appeals, Twelfth Appellate District,[3] raising the following assignments of error:

1. The prosecution engaged in misconduct. The State engaged in misconduct during the course of the trial by failing to disclose a statement of the appellant, and by arguing improper matters during closing argument.

2. The court erred in failing to give an instruction on a lesser included offense. Because there was evidence the appellant was provoked, the court erred in failing to give an instruction on the lesser included offense of voluntary manslaughter.

3. The court should have granted the appellant's motion to suppress statements. The appellant provided to police a taped statement while in custody, prior to Miranda warnings being provided, and while the appellant was receiving treatment for a gunshot wound. That statement, and the one given immediately after, should have been suppressed.

4. The convictions were against the manifest weight of the evidence. The evidence

---

[2]  At a mitigation hearing for this capital case, the jury recommended life imprisonment. (Doc. 8, Exh. 8 at 1; Exh. 39).

[3]  Two notices of appeal were filed on behalf of petitioner, one pro se and the other through counsel. Both were consolidated by the Court of Appeals. (Doc. 8, Exhs. 5, 6, 7).

presented did not support criminal liability on the part of the appellant.

5.  The court erred in allowing the admission of evidence.  An affidavit from the decedent outlining allegations against the appellant on an unrelated matter were hearsay, prejudicial and inadmissible.

6.  The court violated due process by not removing a juror.  When a juror indicated that he knew a key State witness, it was error to not remove that juror in light of the fact that alternates were available.

7.  The court improperly imposed consecutive sentences.  Because the jury did not make specific aggravating findings, the imposition of consecutive sentences was improper.

(Doc. 8, Exh. 8).

The State filed a response (Doc. 8, Exh. 10), and both parties filed supplements to their briefs. (Doc. 8, Exhs. 9, 11, 12).  On June 13, 2005, the Ohio Court of Appeals overruled all of petitioner's assignments of error and affirmed the trial court's judgment.  (Doc. 8, Exh. 13).

Petitioner filed a *pro se* appeal to the Supreme Court of Ohio and raised seven propositions of law that mirrored his assignments of error on direct appeal. (Doc. 8, Exhs. 14, 15).  The State filed a response (Doc. 8, Exh. 16), and on October 12, 2005, the Supreme Court of Ohio accepted the appeal on petitioner's seventh proposition of law challenging his consecutive sentences. (Doc. 8, Exh. 17).  On May 3, 2006, the Supreme Court of Ohio reversed the Court of Appeals as to the seventh proposition of law and remanded the case for resentencing consistent with *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006). (Doc. 8, Exh. 18).

On resentencing, the trial court sentenced petitioner to the same sentence originally imposed. (Doc. 8, Exh. 19).[4]

---

[4] Petitioner asserts that he was sentenced to three years less than the original sentence. (Doc. 11 at 2).  The Court's review of the resentencing entry indicates petitioner received the same sentence originally imposed by the trial court. (Doc. 8, Exh. 19).

Petitioner, through counsel, challenged his resentencing as violating his due process rights and on the basis of ineffectiveness of trial counsel. (Doc. 8, Exhs. 20, 21). The State filed a responsive brief to which petitioner replied. (Doc. 8, Exhs. 22, 23). After supplementing his brief at the direction of the Ohio Court of Appeals, the Twelfth District Court of Appeals affirmed the judgment of the trial court. (Doc. 8, Exhs. 24-26).

Petitioner appealed *pro se* to the Supreme Court of Ohio, but was denied leave to appeal on the basis that his appeal did not involve any substantial constitutional question. (Doc. 8, Exhs. 27-30).

Petitioner's subsequent applications for reopening his direct appeal under Ohio App. R. 26(B) on the basis of ineffective assistance of appellate counsel was denied by the Twelfth District Court of Appeals. (Doc. 8, Exhs. 31-34).

On December 17, 2007, petitioner filed the instant federal habeas corpus petition. (*See* Doc. 1). In the petition, petitioner alleges seven grounds for relief:

**GROUND ONE:** The prosecution engaged in misconduct.

Supporting Facts: The State engaged in misconduct during the course of the trial by failing to disclose a statement of the appellant, and by arguing improper matters during closing argument. The court did find that the closing argument (from the prosecutor) was a misconduct.

**GROUND TWO**: The court erred in failing to give an instruction on a lesser included offense.

Supporting Facts: Because there was evidence the appellant was provoked, the court erred in failing to give an instruction on the lesser included offense of voluntary manslaughter.

**GROUND THREE**: The court should have granted the appellant's motion to suppress statements.

Supporting Facts: The appellant provided to police a taped statement while in

custody, prior to Miranda warning being provided, and while the appellant was receiving treatment for a gun shot wound. That statement, and the one given immediately after, should have been suppressed.

**GROUND FOUR:** The convictions were against the manifest weight of the evidence.

Supporting Facts: The evidence presented did not support criminal liability on the part of the appellant.

**GROUND FIVE:** The court erred in allowing admission of evidence.

Supporting Facts: An affidavit from the decedent outlining allegations against the appellant on an unrelated matter were hearsay, prejudicial and inadmissible.

**GROUND SIX**: The court violated due process by not removing a juror.

Supporting Facts: When a juror indicated that he knew a key State witness, it was error to not remove that juror in light of the fact that alternates were available.

**GROUND SEVEN**: The court improperly imposed consecutive sentences.

Supporting Facts: Because the jury did not make specific aggravating finding[s] the imposition of consecutive sentences (sic).

(Doc. 1 at 6-15).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110

Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated

on the merits in state court unless the adjudication either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to

address the constitutional issues, the federal court must look at the state court's decision and conduct

an independent inquiry into whether the state court reached a decision contrary to clearly established

federal law or based its decision on an unreasonable determination of the facts in light of the

evidence presented. *Schoenberger v. Russell,* 290 F.3d 831, 835 (6th Cir. 2002); *Harris v. Stovall,*

212 F.3d 940, 943 & n. 1 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001). The review is not a full

*de novo* review of the claims, but is deferential to the state court's determination. *Id.*

Upon review of the entire record, this Court concludes that petitioner has failed to establish

that the findings of the state appellate court are unreasonable as to justify federal habeas corpus

relief.  *See Williams v. Taylor*, 529 U.S. 362 (2000).

### III.  PETITIONER'S PROSECUTORIAL MISCONDUCT CLAIM IN GROUND ONE OF THE PETITION IS WITHOUT MERIT.

Petitioner's first ground for relief asserts the prosecution engaged in misconduct by failing to disclose a statement made by petitioner during the trial and by arguing improper matters during closing argument.  Specifically, petitioner contends that his oral statements made to Sergeant Ervin at petitioner's house on the day of the shooting were not disclosed to petitioner prior to trial. (Doc. 8, Exh. 13 at 4).  Respondent argues that the Ohio Court of Appeals' adjudication of this issue was not an unreasonable application of the principles set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 8 at 12-15).  In his traverse brief, petitioner concedes that respondent's arguments on his *Brady* claim are correct and that respondent must prevail on this claim. (Doc. 11 at 4).  Accordingly, the Court determines that habeas relief may not be granted on petitioner's *Brady* claim.

However, petitioner contends that the prosecutor's remarks during closing argument denied him a fair trial and due process of law when considered in the context of the entire proceedings. (Doc. 11 at 4).  Petitioner contends the first remark, "[W]hat we have in this case is credible, honest eyewitness testimony of a mother that saw her daughter's life taken right in front of her eyes, right in front of her in their home by this defendant" (Tr. 569), amounted to improper vouching for the decedent's mother's eyewitness testimony.  The second remark involved intentionally denigrating defense counsel: "I'm not going to enrage anybody here, maybe Mr. Brewer [defense counsel] thought I was going to, but maybe he shouldn't think." (Tr. 626-627).

Respondent argues the prosecutorial misconduct claim is, in part, procedurally defaulted and waived, and, in the alternative, without merit.

In addressing this claim of error, the Ohio Court of Appeals found as follows:

{¶ 21} Appellant also contends under this assignment of error that the state engaged in prejudicial misconduct during closing arguments.

{¶ 22} It is well-accepted that the prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v. Liberatore (1982), 69 Ohio St.2d 583, 589. A prosecutor is at liberty to prosecute with earnestness and vigor. Berger v. United States (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633. Nevertheless, a prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities. State v. Tibbetts, 92 Ohio St.3d 146, 168, 2001-Ohio-132.

{¶ 23} It is also improper for a prosecutor to express his or her personal belief as to the credibility of a witness or the guilt of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14. Moreover, it is improper, and professionally unethical, for a prosecutor, or any attorney, to attack, or make any attempt to disparage the character of, opposing counsel in front of the jury. Id.

{¶ 24} The test for prosecutorial misconduct is "whether * * * remarks [made by the prosecutor] were improper and, if so, whether they prejudicially affected the accused's substantial rights." State v. Lynch, 98 Ohio St.3d 514, 537, 2003-Ohio-2284, ¶ 145. The effect of the alleged misconduct must also be judged in the context of the entire trial, and not treated as an isolated incident in an otherwise properly tried case. State v. Poole (1996), 116 Ohio App.3d 513, 524. An appellate court should only reverse a conviction if the effect of the misconduct "permeates the entire atmosphere of the trial." State v. Tumbleson (1995), 105 Ohio App.3d 693, 699. "The touchstone of [the] analysis is the fairness of the trial, not the culpability of the prosecutor." Lynch, 98 Ohio St.3d at 537, ¶ 145.

{¶ 25} In the instant case, appellant contends the prosecutor expressed his personal belief as to the credibility of a witness when he informed the jury during closing argument that it had heard credible eyewitness testimony from the victim's mother. The record of the closing arguments reveals the prosecutor stated: "[W]hat we have in this case is credible, honest eyewitness testimony of a mother that saw her daughter's life taken right in front of her eyes * * *."

{¶ 26} We begin by noting that appellant did not object to the comment at trial, waiving all but plain error under Crim.R. 52(B). Reversing a conviction for plain error should only be done in exceptional circumstances, when necessary to prevent a miscarriage of justice. State v. Jenks (1991), 61 Ohio St.3d 259, 282.

{¶ 27} The prosecutor's statement amounted to expressing personal opinion and vouching for a witness, and was therefore improper. For two reasons, however, we do not find that the comment caused appellant's conviction to be a miscarriage of justice.

{¶ 28} First, the opinion expressed was not based upon evidence outside the record. A prosecutor's improper comments are considered particularly damaging when they are not supported by the record. See *State v. Stephens* (1970), 24 Ohio St.2d 76. Second, the trial court properly instructed the jury concerning closing arguments. While we recognize that there are some cases of prosecutorial misconduct that cannot be cured by a cautionary instruction, the case at bar is not one of them.

{¶ 29} Appellant also contends the prosecution engaged in misconduct during closing arguments by attacking defense counsel. At one point, the prosecutor stated: "I'm not going to enrage anybody here, maybe [defense counsel] thought I was going to, but maybe he shouldn't think."

{¶ 30} This statement appears to have been in response to a statement by defense counsel. At the end of his closing argument, defense counsel stated: "Now [the prosecutor is] going to try to enrage your passion and sympathy towards [the victims mother]."

{¶ 31} It is certainly acceptable for a prosecutor to respond to such a statement by defense counsel. In this case, however, the prosecutor's response to defense counsel's assertion went beyond what is acceptable, and was an improper attempt to lower defense counsel in the eyes of the jury. Nevertheless, in the context of the entire proceedings, we do not find the affect of the prosecutor's statement was to render appellant's trial unfair.

{¶ 32} In sum, appellant's contentions that we should reverse for prosecutorial misconduct are not well-taken. The first assignment of error is, therefore, overruled.

(Doc. 8, Exh. 13 at 7-10).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In determining whether a state court rested its holding on a

procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).

Under Ohio law, the failure to raise a contemporaneous objection to a perceived error in the trial court constitutes a procedural bar to review of the error on direct appeal. *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000), citing Ohio R. Crim. P. 52; *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977) (citations omitted)), *cert denied*, 531 U.S. 1021 (2000). Ohio courts, however, may perform a limited review of the record to ensure that the alleged error does not amount to a plain error affecting a substantial right. Crim. R. 52.(B); *State v. Ballew*, 76 Ohio St.3d 244, 254, 667 N.E.2d 369 (1996). The primary issue in the plain-error review is whether the outcome of the trial clearly would have been different without the error. *State v. Braden*, 98 Ohio St.3d 354, 362, 785 N.E.2d 439, 452 (2003) (citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus).

Petitioner concedes his trial counsel did not object to the prosecutor's first statement concerning the credibility of the victim's mother and therefore committed a procedural default of this claim. The Ohio Court of Appeals acknowledged the failure to object and reviewed petitioner's prosecutorial misconduct claim under the plain error rule, concluding that the claim lacked merit. (Doc. 8, Exh. 13 at 8-9). However, the court's plain error review did not constitute a waiver of the procedural default by petitioner. The Sixth Circuit has long held that plain-error review by the state courts does not constitute a waiver of state procedural default rules. *Seymour v. Weaver*, 224 F.3d 542, 557 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001) (citing *Paprocki v. Foltz*, 869 F.2d 281,

284-85 (6th Cir. 1989)). More importantly for this case, the Sixth Circuit has consistently held that Ohio's contemporaneous objection rule is an adequate and independent procedural rule that bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting prejudice. *See Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 423-24 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour*, 224 F.3d at 557; *Scott v. Mitchell*, 209 F.3d 854, 866-71 (6th Cir. 2000). Since the record in this case shows that the Ohio Court of Appeals actually enforced the waiver doctrine and undertook only plain-error review the issue, petitioner must show cause and prejudice for the procedural default or a fundamental miscarriage of justice in order to merit federal review.

Petitioner has not provided any justification as "cause" for his procedural default. Since both cause and prejudice must be shown to excuse a procedural default, petitioner's failure to establish cause eliminates the need to consider prejudice. *Murray v. Carrier*, 477 U.S. 478, 494-95 (1986). Nor has petitioner shown that if his claim is not considered on the merits a "fundamental miscarriage of justice" will occur. Accordingly, this part of his prosecutorial misconduct claim is procedurally defaulted and waived for purposes of federal habeas corpus review.

In the alternative, the undersigned determines that this portion of petitioner's prosecutorial misconduct claim is without merit.

The scope of federal habeas corpus review of petitioner's prosecutorial misconduct claims is narrow because the federal court does not sit as an appellate court with supervisory power to rectify general trial errors. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974). Although a court confronted with a such a claim must first determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation. *See, e.g.,*

*Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986). Rather, "[t]he touchstone of due process analysis in such a case is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden,* 477 U.S. at 181. A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985). "Reversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997)).

Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, and *Young,* 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182, and *Berger v. United States,* 295 U.S. 78, 84-85 (1935); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-83 & n.14, and *Young,* 470 U.S. at

13; and (7) whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182.[5]

Moreover, even if it is determined that the prosecutor's misconduct amounted to constitutional error, federal habeas relief may not be granted unless such error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993), in turn quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)); *see also O'Neal v. McAninch,* 513 U.S. 432, 435-36 (1995)).

Under this "harmless error" standard, if upon review of the entire record, the court is convinced that "the error did not influence the jury, or had but slight effect," the conviction must stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 764.  On the other hand, if the court "is left in grave doubt" and "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," the court must find that the error had a substantial influence on the jury and the conviction cannot stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 765.

In the instant case, the Ohio Court of Appeals found that the prosecutor's statement amounted to vouching for a witness and was improper. (Doc. 8, Exh. 13 at 8).  "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [government] behind that witness." *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008) (quoting *United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)).  "It is patently improper for a prosecutor either to comment on the credibility of a

---

[5]  *See also Johnson v. Bell,* 525 F.3d 466, 482 (6th Cir. 2008); *Gillard v. Mitchell,* 445 F.3d 883, 897 (6th Cir. 2006) (citing *Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004)), *cert. denied,* 549 U.S. 1264 (2007).

witness or to express a personal belief that a particular witness is lying." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005) (citing *United States v. Young,* 470 U.S. 1, 17-19 (1985); *Berger,* 295 U.S. at 86-88). Nevertheless, the Court finds the single comment was not so flagrant as to render petitioner's entire trial fundamentally unfair.

In the context of the entire trial, the prosecutor's comment was not so extensive so as to prejudice petitioner. The prosecutor's comment occurred during closing argument and in the context of explaining the difference between direct and circumstantial evidence. (Tr. 567-569). Thus, it is highly doubtful the jury would have been swayed to convict petitioner based on the isolated comment contained in the prosecutor's lengthy closing argument which addressed each item of evidence against petitioner as well as the specific reasons to believe the eyewitness testimony of the victim's mother and to disbelieve petitioner's self-defense argument. (Tr. 608, 610-11, 612-626). The prosecutor made no further comments on the credibility of this or any other witness during closing argument, and petitioner does not contend that the prosecutor vouched for any witnesses at any other point during the trial. Nor has petitioner presented evidence that the prosecutor manipulated or misstated the evidence. *Darden,* 477 U.S. at 182. Because the comment was made one time and was isolated, this factor does not weigh in petitioner's favor.

In addition, the trial court instructed the jury as to the burden of proof, that the arguments of the lawyers were not evidence, and that the jury was the sole judge of the evidence. (Tr. 565, 630-31, 632, 633-34). The jury is presumed to follow the instructions of the court absent an "overwhelming probability" the jury will be unable to follow the instruction. *Greer v. Miller*, 483 U.S. 756, 767 n. 8 (1987); *United States v. Ford*, 872 F.2d 1231, 1239 (6th Cir.1989).

Also, petitioner failed to present any evidence suggesting that the prosecutor intentionally

made any improper statements. Because there is no evidence of intent in the record, this factor does not help petitioner.

Finally, the strength of the direct and circumstantial evidence against petitioner supports a finding that the prosecutor's isolated comment on the credibility of the victim's mother did not affect the outcome of the trial. It is highly unlikely that the jury would have been misled by a single comment, made in the context of explaining the difference between direct and circumstantial evidence, and convict petitioner without finding that the State had met its burden of proving each element of the offenses beyond a reasonable doubt. It was reasonable for the Ohio Appellate Court to conclude that this remark did not render petitioner's trial fundamentally unfair.

Petitioner also takes issue with the prosecutor's attack of defense counsel during closing argument. The prosecutor's comment, "I'm not going to enrage anybody here, maybe Mr. Brewer [defense counsel] thought I was going to, but maybe he shouldn't think" (Tr. 626-627), was found to be improper by the Ohio Court of Appeals, but not so prejudicial to render petitioner's trial unfair. (Doc. 8, Exh. 13 at 9).

As the appellate court reasonably determined, the prosecutor's comment was made in response to defense counsel's statement during closing argument that the prosecutor is "going to try to enrage your passion and sympathy towards Janie Tuerley [the victim's mother]. . . ." (Tr. 605). Thus, to a large extent the remarks were invited, *see United States v. Robinson,* 485 U.S. 25, 33-34 (1988), given defense counsel's statement in closing argument. While intentional in the sense that the prosecutor made the comment about defense counsel in direct response to defense counsel's assertion that the prosecution would try to "enrage" the jury's passion and sympathy, the prosecutor's comment must be examined in light of the defense statement that preceded it. *Darden,*

477 U.S. at 178. In other words, the "invited response" does not excuse prosecutorial misconduct, but rather provides the context in which the court must consider the effect of the improper statement on the outcome of the trial. *United States v. Young,* 470 U.S. 1, 12 (1985). When viewed in this light, the prosecutor's comment did not infect the entire trial with such unfairness as to make petitioner's conviction a denial of due process. The comment was limited to closing argument and there is no indication that the prosecutor made any other inappropriate comments about defense counsel during the trial or closing argument. There is no evidence the prosecutor's comment manipulated or misstated the evidence. Defense counsel's objection to the comment was sustained by the trial court and, as discussed above, the trial court instructed the jury that the closing arguments of the lawyers were not evidence to be considered in determining petitioner's guilt. These factors, taken together, and considered in the context of the trial as a whole, persuades the undersigned that the Ohio Court of Appeals' decision was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, nor did it involve an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In this Court's review of the habeas corpus petition, "the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law." *Macias*, 291 F.3d at 454 (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). The relevant factors discussed above weigh against a finding that the two isolated comments made by the prosecutor in closing argument, in the context of the entire trial, rendered petitioner's trial unfair. *Young,* 470 U.S. at 11-12. The Ohio Court of Appeals' determination that the jury would have nonetheless convicted petitioner even absent the prosecutor's comments was not objectively unreasonable. Petitioner has failed to demonstrate the prosecutor's

challenged statements in closing argument deprived him of a fair trial.  Accordingly, petitioner is not entitled to habeas corpus relief based on the prosecutorial misconduct claim alleged in Ground One of the petition.

## IV.  PETITIONER'S CLAIM THAT THE TRIAL COURT FAILED TO INSTRUCT ON A LESSER INCLUDED OFFENSE SET FORTH IN GROUND TWO OF THE PETITION IS WITHOUT MERIT.

Ground Two of the petition asserts that the trial court erred in failing to give a jury instruction on the lesser included offense of voluntary manslaughter[6] because there was evidence that petitioner was provoked.

Respondent argues that this claim is not cognizable in these habeas corpus proceedings under the controlling Supreme Court precedent of *Beck v. Alabama*, 447 U.S. 625 (1980),  because petitioner's case is a non-capital case.  Respondent also contends that, in any event, the Ohio Court of Appeals' decision rejecting this claim was neither contrary to, nor an unreasonable application of clearly established Federal law.

In addressing this assignment of error, the Twelfth District Court of Appeals found as follows:

{¶ 36} For the sake of clarity, we begin by noting that voluntary manslaughter is an inferior degree of aggravated murder, not a lesser included offense. State v. Tyler (1990), 50 Ohio St.3d 24, 37.[FN1]  Nevertheless, as with a lesser included offense, "a defendant is entitled to an instruction on an inferior degree of the indicted offense when the evidence is such that a jury could both reasonably acquit him of the indicted offense and convict him of the inferior offense." Id.

[Internal Footnote 1: "[A]n offense is an 'inferior degree' of the indicted offense where its elements are *identical* to or contained within

---

[6] Ohio's voluntary manslaughter statute states:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.

Ohio Rev. Code § 2903.03(A).

the indicted offense, except for one or more additional mitigating elements which will generally be presented in the defendant's case." State v. Deem (1988), 40 Ohio St.3d 205, 209 (emphasis in original). "[A] lesser included offense is an offense having a penalty of lesser degree than the indicted offense and which, as statutorily defined, is necessarily included within such indicted offense." Id. The elements of voluntary manslaughter are contained within the offense of aggravated murder, with the additional mitigating elements of sudden passion and serious provocation. Thus, voluntary manslaughter is properly an inferior degree of aggravated murder, not a lesser included offense. See Tyler, 50 Ohio St.3d at 36-37.]

{¶ 37} The crime of aggravated murder entails knowingly causing the death of another. Id. at 36-37. "Voluntary manslaughter consists of knowingly causing the death of another while under the influence of sudden passion or any sudden fit of rage brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the offender into using deadly force." Id.; R.C. 2903.03(A).

{¶ 38} Therefore, in order to be entitled to a voluntary manslaughter instruction, it must have been reasonable for the jury to find appellant knowingly caused the death of Angela, but under a sudden passion brought about because of serious provocation. The burden of producing some evidence at trial from which the jury could reasonably make such a finding was on appellant. See State v. Deem (1988), 40 Ohio St.3d 205, 211.

{¶ 39} In the instant case, appellant offered no evidence that he shot and killed Angela in the heat of passion and because of serious provocation. Appellant's defense was that he did not shoot her. Furthermore, his statement to Detectives Webster and Calhoun indicate that any actions he took were solely in self-defense, not in the heat of passion. Consequently, no reasonable jury could have found him not guilty of aggravated murder, yet guilty of voluntary manslaughter.

(Doc. 8, Exh. 13 at 10-11).

To the extent petitioner claims he is entitled to relief because the trial court committed error

or otherwise abused its discretion under state law governing the giving of lesser-included offense

instructions, he raises issues of state law only that are not cognizable in this federal habeas corpus

proceeding. A federal court may review a state prisoner's habeas corpus petition only on the ground

that the challenged confinement violates the Constitution, laws or treaties of the United States, and

not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied,* 488 U.S. 866 (1988); *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied,* 488 U.S. 1011 (1989).

Turning to the constitutional issue, the United States Supreme Court held in *Beck v. Alabama,* 447 U.S. 625 (1980), that a defendant in a capital murder case has a constitutional right to have the jury instructed on a lesser included offense in certain situations. *Beck,* 447 U.S. at 638. The Supreme Court in *Beck* dealt with an Alabama statute which mandated the death penalty upon a verdict of guilty on a charge of robbery-intentional killing. Under the Alabama scheme, the judge was prohibited from giving the jury the option of convicting on the lesser included non-capital offense of felony murder, an offense which did not require the element of intent. The choice for the jury was to either convict on the capital crime and impose the death penalty, or acquit and allow the defendant to go free without any penalty for any alleged participation in the crime. *Id.* at 628-29. Under this scenario, the Supreme Court reasoned that the jury is more likely to convict on the capital offense despite doubt as to intent because of a strong belief that the defendant committed *some* crime. The Supreme Court held that when a jury is given only two options, "not guilty" and "guilty of capital murder," the risk that the jury will convict when it has reasonable doubt is too great; therefore, in that limited context, a lesser included non-capital offense instruction is required when there is evidence to support a guilty verdict on the lesser included offense. *Id.* at 637-38.

In *Hopper v. Evans,* 456 U.S. 605 (1982), the Supreme Court reaffirmed but restricted the holding of *Beck.* In *Hopper*, the defendant testified before the grand jury that the victim "was not the only person he had ever killed, that he felt no remorse because of that murder, that he would kill again in similar circumstances, and that he intended to return to a life of crime if he was ever freed."

456 U.S. at 607. The Supreme Court determined that the defendant under these circumstances was not entitled to a jury instruction on a lesser included offense because the evidence "not only supported the claim that [the defendant] intended to kill the victim, but affirmatively negated any claim that he did not intend to kill the victim." *Id.* at 613. The Court held that a *Beck* instruction is not mandated under these circumstances and only required when "there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense" but not the greater. *Id.* at 613.

The Court in *Beck* expressly declined to decide "whether the Due Process Clause would require the giving of such instruction in a non-capital case." *Id.* at 638 n.7. To date, the Supreme Court has not held that due process requires the giving of a lesser included offense instruction in a non-capital case. *See Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002), *cert. denied*, 537 U.S. 1192 (2003). The United States Court of Appeals for the Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)); *see also Scott*, 302 F.3d at 606.

In *Bagby*, the Sixth Circuit refused to extend *Beck* to the non-capital context on federal habeas corpus review of a state conviction, reasoning as follows:

> It appears to us that the Supreme Court's opinion in *Beck* is grounded upon Eighth Amendment concerns, rather than those arising from the Due Process Clause of the Fourteenth Amendment. If we are correct in that assessment, then we are not required to extend *Beck* to noncapital cases. Instead, we must determine whether the error asserted by Bagby is of the character or magnitude which should be cognizable on collateral attack. Is the failure to instruct on lesser included offenses in noncapital cases such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with rudimentary demands of fair procedure? . . . Experience tells us that it is not.

> Our view, that it is not an error of such character and magnitude to be cognizable in federal habeas corpus review, is shared by a majority of the circuits. . . .

*Bagby,* 894 F.2d at 796-97 (citations omitted). The court postulated it was "conceivable" that claims such as petitioner's might be cognizable on federal habeas review where "a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Id.* at 795. The court emphasized, however, such occasions would occur only in the "most unusual circumstances," such as where the failure to give the instruction likely resulted in the conviction of an innocent person, because "it is not the function of a federal habeas court to correct errors in state law." *Id.*; *see also Todd v. Stegal,* 40 Fed. Appx. 25, 28 (6th Cir. Apr. 12, 2002), *cert. denied,* 537 U.S. 981 (2002).

As an initial matter, the parties dispute whether petitioner's case involves a capital or non-capital case to which *Beck* applies. Petitioner argues that because he was charged with aggravated murder and subject to the potential penalty of death, this is a capital case. Respondent appears to take the position that because petitioner did not receive the death penalty, this is a non-capital case.

Several circuits have taken the position that where the death penalty is sought, but ultimately not imposed, the case is considered non-capital for purposes of a *Beck* analysis. *See, e.g., Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998); *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir. 1990) *Trujillo v. Sullivan*, 815 F.2d 597, 602 (10th Cir. 1987). It appears that the Sixth Circuit has not yet directly addressed this issue. In an unpublished decision, the Sixth Circuit declined to decide whether to treat a case in which the death penalty was not imposed as a noncapital case for post-conviction purposes. *See Drake v. Superintendent, Trumbull Corr. Inst.,* 106 F.3d 400, 1997 WL 14422, at *9 (6th Cir. 1997) (unpublished). The Court need not determine whether petitioner's conviction in the instant case constitutes a capital crime, because even if the Court were to

characterize this matter as a capital case for purposes of inclusion of a inferior offense instruction, and therefore cognizable in this federal habeas corpus proceeding, petitioner would not be entitled to a jury instruction on voluntary manslaughter.

"[A] *Beck* instruction is only required when 'there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense,' but not the greater [offense].... A lesser-included offense instruction is therefore not required when the evidence does not support it...." *Campbell v. Coyle,* 260 F.3d 531, 541 (6th Cir. 2001) (quoting *Hopper v. Evans,* 456 U.S. 605, 610 (1982)), *cert. denied*, 535 U.S. 975 (2002). Petitioner, in his petition and traverse brief, has not directed the Court to any particular portions of the record in support of his claim of entitlement to an instruction on voluntary manslaughter. In his direct appeal, petitioner cited to his two taped statements produced by the State at trial in which petitioner stated he was attacked by the victim and her mother and acted in self-defense. (Doc. 8, Exh. 8 at 10). Petitioner argued that the jury could have found he acted in sudden passion in response to serious provocation by the victim and her mother. *Id*.

The Court's review of the record indicates insufficient evidence of provocation to warrant an instruction on voluntary manslaughter. "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *State v. Deem*, 40 Ohio St.3d 205, 211, 533 N.E.2d 294, 300 (1988) (quoting *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16 (1982) (paragraph five of the syllabus)).

According to petitioner's version of events, the victim possessed the gun, shot at him first, then dropped the gun, after which a struggle ensued between the victim, her mother and petitioner and during which the gun discharged striking the victim. (Tr. 187-203; 403, 408-409). Petitioner stated he never had the gun in his possession nor did he fire the gun, but that the gun discharged during the struggle. (Tr. 193; 409). As the Ohio Court of Appeals reasonably determined, the evidence failed to show the shooting was influenced by a sudden passion or rage brought on by serious provocation by the victim to justify an instruction on voluntary manslaughter. Petitioner's statements to police indicated he acted in self-defense, and not out of rage or a sudden passion. In the absence of such evidence, the trial court's failure to give an instruction on voluntary manslaughter cannot be said to be contrary to controlling Supreme Court authority, nor arbitrary and unsupportable and in clear defiance of state law. *See Bagby*, 894 F.2d at 795.

Nor is this the unusual case contemplated by *Bagby* where a failure to give a lesser included or inferior offense instruction amounted to a fundamental miscarriage of justice that was likely to have resulted in the conviction of an innocent person. *See Bagby,* 894 F.2d at 795; *see also Scott,* 302 F.3d at 606. Therefore, petitioner is not entitled to habeas corpus relief based on the trial court's failure to instruct the jury on voluntary manslaughter.

**V. PETITIONER'S FIFTH AMENDMENT CLAIM ASSERTED IN GROUND THREE OF THE PETITION IS WITHOUT MERIT.**

In Ground Three of the petition, petitioner asserts that the taped statement he gave to

Detective Webster prior to a *Miranda* warning being provided and while he was receiving treatment

for a gun shot wound at the hospital violated his constitutional rights.  Petitioner also contends the

statement he gave to Detective Calhoun after he was Mirandized should have been suppressed as

tainted by the first illegal interrogation.

In overruling this assignment of error, the Twelfth District Ohio Court of Appeals on direct

appeal made the following findings:

{¶ 43} In his third assignment of error, appellant contends the trial court erred in
denying his motion to suppress statements he made to law enforcement officers.
While receiving medical treatment at the hospital, Detectives Webster and Calhoun
both interrogated appellant and recorded his statement concerning his encounter with
Angela and Janie Tuerley earlier in the day.

{¶ 44} In order to be admissible as evidence against a defendant, statements made to
law enforcement officers must be freely and voluntarily given.  See Colorado v.
Connelly (1986), 479 U.S. 157, 107 S.Ct. 515.  Under circumstances that constitute
custodial interrogation, they must also be made subsequent to the administering of
Miranda warnings.  See Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602;
State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396.

{¶ 45} Appellant first argues that his statements at the hospital should have been
suppressed because he underwent custodial interrogation without being properly
Mirandized.  We disagree.

{¶ 46} The Supreme Court has described custodial interrogation as "questioning
initiated by law enforcement officers after a person has been taken into custody or
otherwise deprived of his freedom of action in any significant way." Miranda, 384
U.S. at 444, 86 S.Ct. at 1612.  In determining whether an individual was in custody,
the ultimate inquiry is simply whether there was a "formal arrest or restraint on
freedom of movement of the degree associated with a formal arrest." California v.
Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520.

{¶ 47} Appellant was not formally arrested until after he gave his statement at the
hospital.  Where a suspect has not been formally arrested, "the restraint on the

suspect's freedom of movement must be significant in order to constitute custody." State v. Coleman, Butler App. No. CA2001-10-241, 2002-Ohio-2068, ¶ 23.

{¶ 48} In this case, no evidence was presented at the suppression hearing indicating appellant was restrained in any way during the interview, or that he was at the hospital receiving treatment against his will. Instead, the circumstances more closely resembled that of a simple interview. An interview, even if conducted at a police station, does not automatically convert an encounter into a custodial situation. State v. Fille, Butler App. No. CA2001-08-066, 2002-Ohio-3879, ¶ 18. See, also, Beckwith v. United States (1976), 425 U.S. 341, 96 S.Ct. 1612 (rejecting the notion that the "in custody" requirement was satisfied merely because the police interviewed a person who was the focus of a criminal investigation). Consequently, informing appellant of his *Miranda* rights prior to placing him in custody was not required in this case.

{¶ 49} Appellant also contends that his statement was involuntary and, therefore, even in the absence of a need for Miranda warnings, his statement should have been suppressed. Specifically, appellant contends that Detective Webster improperly induced him to make a statement during the interview at the hospital when he indicated that it would be in appellant's best interest to talk with him.

{¶ 50} The test for voluntariness is whether, "in light of the totality of the circumstances, the police obtained the incriminating statements by coercion or improper inducement." State v. Arrington (1984), 14 Ohio App.3d 111, 114. The line to be drawn between permissible police conduct and conduct deemed to induce or tending to induce an involuntary statement depends upon the nature of the benefit to be derived by a defendant if he speaks the truth. Id. at 115.

{¶ 51} If "the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution[,] or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible." Id. Improper inducements or coercion are not present, however, when the only benefit pointed out to a suspect is that which flows naturally from a truthful and honest course of conduct. Id.

{¶ 52} Nothing in the record suggests Detective Webster's statement that talking would be in appellant's best interest was anything more than a suggestion that honesty for its own sake was the best course for appellant to follow. Accordingly, appellant's contention that his statement was not voluntary is also not well-taken.

(Doc. 8, Exh. 13 at 12-15).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case

to be a witness against himself." U.S. Const. amend. V.  The privilege against self-incrimination, applicable to the States through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 8 (1964), forbids the State's use of statements, "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  An individual taken into custody is guaranteed the right to remain silent and to the assistance of counsel, either retained or appointed, during the custodial interrogation, and to be informed that anything he says can be used against him in a court of law. *Miranda*, 384 U.S. at 478-79.[7]  The interrogation of a suspect in custody who has not received these so-called *Miranda* warnings is "presumed compelled." *Oregon v. Elstad,* 470 U.S. 298, 317 (1985).  *Miranda* warnings must be administered "in the context of custodial interrogations given 'the compulsion inherent in custodial surroundings.'" *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004) (quoting *Miranda*, 384 U.S. at 458).

A custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. (quoting *Miranda*, 384 U.S. at 444).  The custody determination is an objective one that "must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances." *Id*.  The Court must consider (1) the circumstances surrounding the interrogation; and (2) whether a reasonable person would have felt at liberty to terminate the interrogation and leave. *Id*. (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).  Factors

---

[7] A defendant, however, can waive these rights as long as the waiver is voluntary, knowing, and intelligent. *Id.* at 444.  The State bears the burden of proving waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

relevant to the inquiry include: "the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told [he] need not answer the questions." *U.S. v. Panak*, __ F.3d __, 2009 WL 48216, *2 (6th Cir. Jan. 9, 2009).

In addition, before a confession is admissible, it "must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Bram v. United States*, 168 U.S. 532, 542-43 (1897) (internal quotation and citation omitted); *see also Colorado v. Connelly,* 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment"). An admission is deemed to be coerced where the conduct of law enforcement officials was such as to overbear the accused's will to resist, thus bringing about a confession not freely self-determined. *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)). The ultimate question in coerced confession cases is whether the confession was voluntary, or in other words, "the product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).

In determining whether a statement by a suspect is voluntary, the Court must consider "'whether a defendant's will was overborne by the circumstances surrounding the giving of a [statement].'" *Dickerson v. United States,* 530 U.S. 428, 434 (2000) (quoting *Schneckloth,* 412 U.S. at 226). Courts must consider the totality of the circumstances in determining the voluntariness of coerced statements, including: (1) whether there was police coercion; (2) the length of the interrogation; (3) the location of the interrogation; (4) the continuity of the interrogation; (5) the

suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and, (8) whether the suspect was advised of his or her *Miranda* rights. *Withrow v. Williams,* 507 U.S. 680, 693-94 (1993) (internal citations omitted).

The first question that must be addressed by this Court on habeas review is whether the Ohio Court of Appeals' decision that petitioner was not "in custody" at the time he was initially questioned by Detective Webster was objectively unreasonable. A review of the record in this case shows the State court's decision was not objectively unreasonable.

The Court determines that the facts weigh against a finding that petitioner was "in custody" for purposes of *Miranda*, though there are factors supporting both sides of the "in custody" equation. Although Detective Webster made a statement to an unidentified woman early in the interview that petitioner was "being detained right now for an investigation" (Doc. 8, Exh. 42, Tr. 9), a statement which seemingly cuts in favor of an "in custody" finding, the objective circumstances surrounding the interview as a whole indicate petitioner was not in custody. Petitioner voluntarily accepted the offer to be transported by police to the hospital for treatment of his gunshot wound. (Doc. 8, Exh. 13, ¶8). Petitioner was not questioned at a police station, but in a hospital examination room where hospital personnel were present and attending to petitioner's wound. Petitioner was not formally arrested. He was not handcuffed or physically restrained in any way during the interview, nor did the officers limit petitioner's freedom of movement. *See U.S. v. Panak*, __ F.3d __, 2009 W.L. 48216, *3 (6th Cir. Jan. 9, 2009). The questioning was stopped when petitioner was transported by hospital personnel to the x-ray department, and resumed when he returned. (Doc. 8, Exh. 42, Tr. 17). Petitioner was not accused of any crime at that time. He never asked to leave the examination room or to make a telephone call. He was never told he could not leave, nor did he ask the officers to

leave or to cease their questions. *See Joseph v. Coyle*, 469 F.3d 441, 467-468 (6th Cir. 2006). His demeanor was described as "very casual" and at times there was laughter between petitioner, the nurses who treated him, and the officers about medical procedures and his injuries. (Doc. 8, Exh. 42, Tr. 9; 51). There was no evidence that the detective brandished firearms or acted in a threatening manner. *See U.S. v. Panak*, __ F.3d __, 2009 W.L. 48216, *3 (6th Cir. Jan. 9, 2009). Petitioner was asked by Detective Webster whether he had any questions the detective could answer for him and advised petitioner it would be in his "best interest" to sit down and talk and tell his side of the story. (Doc. 8, Exh. 42, Tr. 17-18). When asked if he would like to tell Detective Webster what happened that day, petitioner responded, "okay." (Doc. 8, Exh. 42, Tr. 20). Officer Webster specifically asked petitioner, "And you do understand that you do not have to talk to me, correct?" (Doc. 8, Exh. 42, Tr. 21). Petitioner responded "yes." (Doc. 8, Exh. 42, Tr. 21). *See U.S. v. Panak*, __ F.3d __, 2009 W.L. 48216, *2 (6th Cir. Jan. 9, 2009). Petitioner also confirmed he was aware that he had the right to remain silent, to talk to an attorney, and that anything he said could be used against him. (Tr. 25-26).[8] Petitioner confirmed that no threats or promises had been made to him by the police (Doc. 8,

---

[8]  When petitioner was asked about his relationship with the victim and began telling Detective Webster his version of the events of that day (Doc. 8, Exh. 42, Tr. 22-25), Detective Webster interrupted petitioner and asked:

Q. Now, before we go any further, do you understand what your rights are?
A. Yes.
Q. Can you tell me what those rights are?  You don't have to say exactly word for word, but you understand what your rights are?
A. Yes.
Q. What are your rights?
A. You have a right–you have a right to be silent.
Q. Okay.
A. And a right to speak to an attorney and anything you say can and will be used against you in law.
Q. That's pretty, close, how about if you cannot afford one, one will be appointed for you?
A. Yes.
Q. And so you understand your rights?
A. Yes.
(Doc. 8, Exh. 42, Tr. 25-26).

Exh. 42, Tr. 21), and there was no suggestion he would be placed under arrest. *Yarborough*, 541 U.S. at 664. The interview lasted about one hour (Doc. 8, Exh. 42, Tr. 37, 39, 41), "a length of time that compares favorably with other encounters [the Court has] deemed non-custodial." *See U.S. v. Panak*, __ F.3d __, 2009 W.L. 48216, *3 (6th Cir. Jan. 9, 2009) (citing *United States v. Crossley*, 224 F.3d 847, 862 (6th Cir. 2000) (less-than-an-hour interview); *United States v. Mahan*, 190 F.3d 416, 420, 422 (6th Cir. 1999) (hour-and-a-half interview)). A reasonable person under these circumstances would have felt free to terminate the interrogation and leave. *Yarborough*, 541 U.S. at 664-65. Moreover, when certain facts point in favor of a finding that the defendant was in custody while others point to the opposite conclusion, as in this case, the Supreme Court has concluded that on habeas review "differing indications lead us to hold that the state court's application of our custody standard was reasonable." *Yarborough*, 541 U.S. 652, 665. Therefore, petitioner is not entitled to habeas relief on his "in custody" claim.

In addition, the Ohio Court of Appeals' decision that petitioner's statements were made voluntarily is neither contrary to nor an unreasonable application of controlling Supreme Court authority. This Court on federal habeas review must presume the correctness of the state court's factual determinations. 28 U.S.C. § 2254(e)(1). Petitioner bears the burden of rebutting such presumptions with clear and convincing evidence. *Id.* Therefore, the state court's analysis of subsidiary factual questions in determining the voluntariness of a statement, such as the length and circumstances of the interrogation and assessments of credibility, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton,* 474 U.S. 104, 116-17 (1995).

As indicated above, petitioner was questioned in a hospital setting, and not a police station. Petitioner was a mature man in his 40's. (Doc. 8, Exh. 41, Tr. 5). At no point did petitioner indicate

he did not wish to or could not talk to the detective because of the injury to his hand. (Doc. 8, Exh. 42, Tr. 9). Nor did he ever say he simply did not want to talk to detectives. (Doc. 8, Exh. 42, Tr. 10). There was no evidence that petitioner was under the influence of drugs or alcohol. (Doc. 8, Exh. 42, Tr. 8, 55). Petitioner confirmed that he understood he was not required to talk to Detective Webster (Doc. 8, Exh. 42, Tr. 21). Although petitioner was not formally read his *Miranda* rights by Detective Webster prior to being questioned at the hospital (Doc. 8, Exh. 42, Tr. 49), during the course of the interview he confirmed that he understood his right to remain silent, to counsel, and that anything he said could be used against him. (Doc. 8, Exh. 42, Tr. 25-26). The interview lasted about one hour. (Doc. 8, Exh. 42, Tr. 37, 39, 41). Detective Webster's statements that it would be in petitioner's "best interest" to sit down and talk and tell his side of the story (Tr. 17-18) were not so coercive under the circumstances that they would have overborne petitioner's will to resist. Under the totality of the circumstances presented, petitioner's statements were voluntary and that state court's decision to that effect was not objectively unreasonable.

Finally, petitioner's contention that his statements made to Detective Calhoun were tainted by the first "interrogation" is without merit.[9] First, since petitioner was not "in custody" for purposes of the initial interview with Detective Webster, *Miranda* warnings were not mandated and any information obtained as a result of the interview could not "taint" his subsequent statements to Detective Calhoun.

Second, in *Oregon v. Elstad*, 470 U.S. 298 (1985), the Supreme Court considered the issue of "whether an initial failure of law enforcement officers to administer the warnings required by

---

[9] After the initial interview with Detective Webster, petitioner was transported to a different hospital for surgery on his hand. At this second hospital, petitioner was administered *Miranda* warnings, then questioned by Detective Calhoun. (Tr. 54-64)

*Miranda v. Arizona,* 384 U.S. 436 (1966), without more, 'taints' subsequent admissions made after a suspect has been fully advised of and has waived his *Miranda* rights." *Id*. at 300. The Supreme Court rejected the notion that remarks made prior to a suspect being Mirandized compromised the voluntariness of a later confession. *Id*. at 310. The Court reasoned that "a careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible. The warning conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an 'act of free will.'" *Id*. at 310-11. The Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id*. at 311. Thus, the suppression of petitioner's statements to Detective Calhoun after he was given the *Miranda* warnings was not constitutionally required. Petitioner, therefore, is not entitled to habeas relief on his third ground for relief.

## VI. PETITIONER'S MANIFEST WEIGHT OF THE EVIDENCE CLAIM ALLEGED IN GROUND FOUR IS NOT COGNIZABLE IN HABEAS CORPUS.

In Ground Four of the petition, petitioner asserts his convictions were against the manifest weight of the evidence. A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997), *superseded by state constitutional amendment on other grounds in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The Due Process Clause does not provide relief for defendants whose convictions are against

the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as a "thirteenth juror" and to  review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982).  Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Therefore, petitioner's fourth claim should be dismissed as non-cognizable.

In his traverse brief, petitioner argues that his convictions are not supported by "competent and credible" evidence because of "the literally hundreds of material inconsistencies on the decedent's mother's testimony. . . ." (Doc. 11 at 11).  In his petition, however, petitioner did not raise a claim of insufficient evidence to support his aggravated murder, aggravated burglary, and felonious assault convictions. (Doc. 1).  Even if the Court were to construe petitioner's fourth ground for relief as asserting a claim of insufficient evidence to convict under the Due Process

Clause, the claim would be without merit.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship,* 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the federal court conducts an independent review of the state court record in analyzing petitioner's sufficiency of the evidence claim. *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006). However, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "*Jackson* makes clear that 'a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *O'Hara v. Brigano,* 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 326). In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647,

705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788.

The gist of petitioner's argument in this case is that the testimony of the victim's mother was not credible in view of numerous inconsistencies with the other evidence of record. He argues that the evidence "is far more supportive of the truth of the matter, being that Petitioner was lured to the apartment by the decedent and her mother with the promise of the repayment of a debt to him, and was waylaid upon his arrival, and wounded in the process of escaping with his life." (Doc. 11 at 11). The jury was faced with two opposing views of the facts: one as described by petitioner in his statements to police that he was victimized, and that of the victim's mother who testified that petitioner forced his way into the apartment, knocked her down, hit her with a gun, and pointed a gun at her daughter's head while holding her down and shooting her. (Tr. 30-95). The jury could reasonably have believed the victim's mother's testimony while discrediting petitioner's statements made to police, and on habeas review, this Court may not reweigh the evidence and reassess the credibility of the witnesses. *O'Hara,* 499 F.3d at 500; *Matthews*, 319 F.3d at 788. In fact, the Court must presume that the jury resolved the conflicting evidence in favor of the prosecution in weighing the evidence in this case. *O'Hara*, 499 F.3d at 499, 500. When viewed in the light most favorable to the prosecution, the testimony of the victim's mother, coupled with the evidence from the coroner that the victim died from a gunshot wound to the head (Tr. 358), was sufficient to establish the essential elements of aggravated murder, aggravated burglary, and felonious assault beyond a reasonable doubt.[10]

---

[10] Aggravated murder requires purposely causing the death of another while, for purposes of this case, committing aggravated burglary. Ohio Rev. Code § 2903.01(B). Aggravated burglary is defined as a trespass by force in an occupied structure when another is present with purpose to commit a criminal offense while having a deadly weapon. Ohio Rev. Code § 2911.11(A)(2). Felonious assault is defined as knowingly causing physical harm

## VII.  GROUND FIVE OF THE PETITION IS WITHOUT MERIT.

Petitioner's fifth ground for relief asserts the trial court erred by admitting into evidence an affidavit from the decedent outlining allegations against petitioner on an unrelated matter.  Petitioner contends the affidavit was hearsay and inadmissible, and prejudicial to his defense.

In addressing this claim, the Ohio Court of Appeals ruled as follows:

{¶ 62} In his fifth assignment of error, appellant contends the trial court erred when it admitted into evidence an affidavit and other documents related to the domestic violence protection order obtained by Angela on February 20, 2003.

{¶ 63} We first note that the admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus.  Absent an abuse of that discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. State v. Issa, 93 Ohio St.3d 49, 64, 2001-Ohio-1290.  An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Barnes, 94 Ohio St.3d 21, 23, 2002-Ohio-68.

{¶ 64} In the instant case, the state introduced an affidavit and other court documents wherein Angela accused appellant of violating the domestic violence protection order put in place on February 20, 2003.  A hearing on the allegations was set for May 14, 2003, the day after Angela's death.  Appellant contends the documents were inadmissible hearsay, introduced only to inflame the passions of the jury.  Again, we disagree.

{¶ 65} Appellant's indictment initially contained two death penalty specifications under R.C. 2929.04(A)(7) and (8).  The state initially offered the documents to show appellant violated R.C. 2929.04(A)(8), but that specification was eventually dismissed.  Ultimately, the trial court admitted the documents for the reason that they tended to show motive or purpose.

{¶ 66} The death specification under R.C 2929.04(A)(7) that remained in appellant's indictment required a showing of prior calculation or design.  In addition, aggravated murder under R.C. 2903.01(B) required proof that Angela's death was caused purposely.  Thus, the affidavit and related documents were properly admitted.  The fifth assignment of error is overruled.

---

to another by means of a deadly weapon. Ohio Rev. Code § 2903.11(A)(2).

(Doc. 8, Exh. 13 at 16-18).

Petitioner's claim the trial court violated Ohio law in permitting the prosecutor to use the victim's affidavit is not appropriate for federal habeas corpus review because the writ may not issue on perceived errors of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). The Court "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989) (citation omitted)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). *See McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 543 U.S. 892 (2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001) ("Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.") (internal quotation marks and citation omitted).

Petitioner has failed to demonstrate how the allegedly incorrect evidentiary ruling denied him a fair trial. The trial court specifically instructed the jury that the victim's affidavit could not be used to prove the truth of the matters asserted in the affidavit, but only for purposes of demonstrating why the domestic violence show cause order was issued. (Doc. 8, Tr. 809-810). Upon review of the entire record, the undersigned is convinced that the evidentiary ruling and prosecutor's use of the victim's affidavit were not sufficiently egregious to trigger fair trial concerns, and in any event, had at most only a minimal effect or influence on the jury's verdict in this case. *See Kotteakos v. United States,* 328 U.S. 750, 776 (1946); *see also O'Neal v. McAninch,* 513 U.S. 432, 436-38 (1995)

38

(conviction must stand under "harmless error" standard if upon review of the entire record court is convinced that "the error did not influence the jury, or had but slight effect"). Petitioner, therefore, has not demonstrated he is entitled to habeas relief based on the claim alleged in Ground Five of the petition.

## VIII. PETITIONER'S SIXTH GROUND FOR RELIEF IS WITHOUT MERIT.

Petitioner's sixth ground for relief asserts the trial court violated petitioner's due process rights by not removing a juror who indicated he knew a key State witness. (Doc. 1). In his traverse brief, petitioner argues the particular juror in question was "a friend of the decedent" and that by seating this juror, the trial court violated his Sixth Amendment right to a fair and impartial jury. (Doc. 11 at 13).

Contrary to the assertion in petitioner's traverse brief, the juror in question was not a "friend of the decedent," but rather an acquaintance of a relative of the victim's mother. (Tr. 210). In addressing this claim of error, the Ohio Court of Appeals stated:

{¶ 69} In his sixth assignment of error, appellant contends that he was denied his right to a fair and impartial jury. Specifically, appellant contends that on the second day of trial a juror admitted to knowing a relative of Janie Tuerley, a key witness for the state, and therefore should have been excused and replaced.

{¶ 70} A defendant in a state criminal trial has the constitutional right to be tried before a panel of fair and impartial jurors. See Duncan v. Louisiana (1968), 391 U.S. 145, 88 S.Ct. 1444; see, also, Section 10, Article I, Ohio Constitution. Consequently, a jury must decide a case solely on the evidence before it, and not reach its verdict based upon influences outside the courtroom. State v. Taylor (1991), 73 Ohio App.3d 827, 831.

{¶ 71} One potential outside influence on a jury is the prior acquaintance of a juror with a witness who testifies at trial. The mere fact that a juror is acquainted with a witness, however, does not necessarily render that juror impartial. State v. Woodards (1966), 6 Ohio St.2d 14, 22.

{¶ 72} In determining whether to remove or retain a juror who admits to knowing a

witness, trial courts are granted broad discretion. See <u>State v. Keith</u>, 79 Ohio St.3d 514, 527, 1997-Ohio-367. In addition, when making that determination, a trial court may rely upon a juror's testimony that he or she can and will remain impartial. <u>State v. Herring</u>, 94 Ohio St.3d 246, 259, 2002-Ohio-796. We should assume, moreover, unless a defendant can demonstrate otherwise, that jurors follow their oaths and deliberate only upon the evidence adduced at trial. <u>State v. Durr</u> (1991), 58 Ohio St.3d 86, 91.

{¶ 73} Upon examination by the trial court, the juror in question stated that the prior acquaintance would have no effect on his decision. In particular, he indicated that if the evidence warranted an acquittal, he could and would render such a verdict. He also indicated that he would follow his oath and deliberate only upon the evidence produced at trial.

{¶ 74} As appellant has failed to demonstrate from the record that the juror in question failed to follow his oath, we cannot say the trial court abused its discretion in choosing not to remove him. Accordingly, appellant's sixth assignment of error is overruled.

(Doc. 8, Exh. 13 at 18-19).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury." The right, held applicable to the states through the Fourteenth Amendment's Due Process Clause, requires that a defendant be provided a fair trial by a panel of impartial, "indifferent" jurors whose verdict is based on the evidence developed at trial. *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). *See also Morgan v. Illinois*, 504 U.S. 719, 726 (1992).

Jurors are presumed to be impartial. *See Irvin*, 366 U.S. at 723. The right to an impartial jury does not mandate a new trial every time a juror has been placed in a potentially compromising situation or require that jurors be totally ignorant of the facts and issues involved as "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips,* 455 U.S. 209, 217 (1982); *see also Murphy v. Florida,* 421 U.S. 794, 800 (1975). The constitutional requirement of impartiality is satisfied if the jury is "capable and willing to decide the case solely on the evidence before it." *Smith,* 455 U.S. at 217. In federal habeas corpus review,

the trial judge's determination of a jury's impartiality is a finding of fact subject to special deference absent clear and convincing evidence otherwise. *Patton v. Yount,* 467 U.S. 1025, 1031, 1038 (1984); *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003), *cert. denied*, 543 U.S. 842 (2004).

The record in this case does not establish that petitioner's constitutional right to an impartial jury was denied. The juror in this case, Mr. Asher, testified that two to three years back his child played soccer with a relative of the victim's mother. (Tr. 210). When questioned by the trial court about his association with the witness and his ability to decide the case impartially, Mr. Asher testified he could decide the case solely on the evidence and the law. (Tr. 207-212). The trial court specifically found that "this juror can and will follow his oath to decide the case based upon the law and the evidence" and that any acquaintance with the relative of the victim's mother "will not influence his decision in either way." (Tr. 211). The trial judge also noted that if the evidence were such that an acquittal was warranted, this juror would render such a verdict. (Tr. 212). Defense counsel deferred to the trial court's decision in the matter. (Tr. 210). Petitioner offers no evidence to rebut Mr. Asher's assertion of his ability to follow the law as provided by the trial court and to decide the case based only on the trial evidence. Thus, the Ohio Court of Appeals' decision rejecting this assignment of error was neither contrary to nor an unreasonable application of federal law based on the facts presented. Petitioner is not entitled to habeas corpus relief on this claim.

**IX. PETITIONER'S *BLAKELY* AND EX POST FACTO CLAIMS ASSERTED IN GROUND SEVEN OF THE PETITION ARE WITHOUT MERIT.**

Ground Seven of the petition asserts the court improperly imposed consecutive sentences without a jury determination of the necessary aggravated findings in violation of *Blakely v. Washington*, 542 U.S. 296 (2004).

Respondent contends this ground for relief is moot because the Ohio Supreme Court ordered petitioner's case be remanded for resentencing by the trial court and the trial court resentenced petitioner without making any impermissible factual findings. (Doc. 8, Exhs. 19, 41).

In his traverse brief, petitioner now argues that his resentencing violates the Ex Post Facto Clause and due process. Petitioner's conviction occurred in 2003. He successfully appealed the imposition of consecutive sentences as violating his constitutional rights under *Blakely* and on May 3, 2006, the Supreme Court of Ohio remanded his case for resentencing consistent with *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), *cert. denied,* 127 S.Ct. 442 (2006). (Doc. 8, Exh. 18). On June 9 2006, petitioner was resentenced under Ohio's sentencing statute as modified by *Foster*. The trial court imposed the same sentences as originally imposed, including the consecutive sentences petitioner now challenges. Petitioner contends the *Foster* decision constitutes a judicial enlargement of Ohio's sentencing statute, Ohio Rev. Code § 2929.14, in violation of the Ex Post Facto Clause and due process. (Doc. 11 at 13-27). For the reasons that follow, the Court rejects petitioner's claim.

In *State v. Foster*, the Supreme Court of Ohio held that several provisions of Ohio's felony sentencing statute were unconstitutional pursuant to the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely,* the United States Supreme Court determined that an enhanced sentence imposed by a judge under a state's sentencing statute, which was based on facts

42

neither admitted by the defendant nor found by a jury, violated the Sixth Amendment to the United States Constitution. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at 303. Importantly, the *Blakely* Court clarified that "the 'statutory maximum' . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.*

The reasoning of *Blakely* was extended by the Supreme Court to the United States Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing guidelines and thus any fact (other than a prior conviction) that increases a defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244. The *Booker* Court held that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based on facts not found by the jury beyond a reasonable doubt. *Id.* at 243-44. To remedy the Sixth Amendment violation, the Supreme Court severed two sections of the Sentencing Reform Act, effectively making the Sentencing Guidelines advisory. *See id.* at 244-264 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

On February 27, 2006, the Ohio Supreme Court in *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), held that certain provisions of Ohio's sentencing statute were unconstitutional under *Blakely* because they mandated additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 19-25, 845 N.E.2d at 490-94. Noting that the "overriding goals of

Ohio's sentencing scheme are to protect the public and punish the offender," and that the Ohio legislature "delegated the role of determining the applicability of sentencing factors to judges rather than to juries to meet these overriding goals," the Supreme Court of Ohio determined as in *Booker* that the proper remedy was to sever the *Blakely*-offending portions of the statutes and grant trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *Id.* at 25-30, 845 N.E.2d at 494-98. Following the severance of the unconstitutional portions, the resulting Ohio sentencing statutes eliminated the presumptions in favor of minimum and concurrent sentences and allowed a court to sentence a defendant to any term within a crime's sentencing range or to consecutive sentences without making findings of fact.

When petitioner was indicted in 2003, Ohio's sentencing statute, Ohio Rev. Code § 2929.14(E), required a judicial finding that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." When petitioner was resentenced in 2006 under the post-*Foster* sentencing scheme, the trial judge had full discretion to impose consecutive prison sentences for any reason or no reason, without having to make findings for imposing non-concurrent sentences on petitioner. *Foster,* 109 Ohio St.3d at 25-30, 845 N.E.2d at 494-98; *see also Minor v. Wilson,* 213 Fed. Appx. 450, 453 n. 1 (6th Cir. 2007). Thus, the trial judge's imposition of consecutive sentences in petitioner's case did not violate *Blakely*.

Petitioner nonetheless argues that the application of the *Foster* sentencing scheme to his resentencing had an impermissible *ex post facto* effect on his sentence. (See Doc. 11 at 13-27). As

explained above, pursuant to *Foster*, the sentencing court may impose consecutive sentences in its discretion without making any findings of fact. 109 Ohio St.3d at 30, 845 N.E.2d 498. Petitioner suggests that since the indictment was issued in 2003, prior to the *Foster* decision, he was entitled to be sentenced under the pre-*Foster* sentencing scheme which, under *Blakely*, meant that he was presumptively entitled to concurrent prison terms. Petitioner argues that *Foster* resulted in the lengthening of his total sentence without specific findings of fact and constitutes the infliction of a greater punishment than the law allowed for the crime when it was committed.

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) " makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Rogers v. Tennessee,* 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10. Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions." *McGhee v. Konteh,* No. 1:07cv1408, 2008 WL 320763, at *10 (N.D. Ohio Feb. 1, 2008) (unpublished); *see also Rogers,* 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit *ex post facto* judicial decision-making. *Rogers,* 532 U.S. at 456. Although the Due Process Clause does not

incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia,* 378 U.S. 347, 351, 352, 354-55 (1964)); *see also United States v. Barton,* 455 F.3d 649, 654 (6th Cir.) ("when addressing *ex post facto*-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), *cert. denied,* 127 S.Ct. 748 (2006).

Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely, Booker,* and *Foster* did not change the elements necessary to convict petitioner of the aggravated murder, aggravated burglary, and felonious assault charges, and petitioner was aware of the potential penalties he faced on such charges both before and after *Foster*. *McGhee, supra,* 2008 WL 320763, at *11. In 2003, when the crimes were committed in this case, the then-applicable provisions of Ohio's sentencing statute provided sufficient notice to petitioner that the trial court had discretion to impose consecutive sentences as long as the court made certain findings consistent with Ohio Rev. Code §2929.14(E). In other words, petitioner was on notice that he potentially faced consecutive sentences so long as the sentencing judge made the requisite findings. Similarly, post-*Foster,* petitioner knew that the trial court retained the discretion to impose consecutive sentences. Therefore, both before and after *Foster,* petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties. As one Ohio district court reasoned in rejecting an Ohio prisoner's *ex post facto*-type due process claim challenging his re-sentencing under *Foster* to the same maximum prison term that had been imposed pre-*Foster*:

Prior to *Foster,* the trial court made additional findings of fact consistent with Ohio Revised Code § 2929.14(C) and sentenced Petitioner to the maximum sentence available under Ohio Revised Code § 2929.14(A)(1): ten years. Under constitutional law as Ohio courts interpreted it at the time, Petitioner was not entitled to . . . proof beyond a reasonable doubt as to the additional findings of fact required by Ohio Revised Code § 2929.14(C).

Now, Petitioner alleges that his due process rights were violated because he has a right to . . . proof beyond a reasonable doubt under the new law arising from *Foster.* After *Foster,* the elements of the crime for which Petitioner was charged were unaffected. . . . Further, Petitioner's claim of a right to . . . trial by jury regarding sentencing factors lacks merit because, following *Foster,* the trial judge maintains discretion under Ohio Revised Code § 2929.14(A)(1) to impose a sentence in the range of three to ten years for a first degree felony based upon facts admitted by the defendant or found by a jury. Therefore, the statutory maximum for *Apprendi* purposes is ten years, as Petitioner believed it was before *Foster.*

Since the *Foster* decision does not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced for a first degree felony, *Foster* does not raise an *ex post facto*-type due process violation. Moreover, the trial judge's application of *Foster* to Petitioner's case did not violate *Apprendi* because he did not sentence Petitioner beyond the statutory maximum.

*McGhee, supra,* 2008 WL 320763, at *11. The rationale of the *McGhee* court applies equally in the case of consecutive sentences.

The Court notes that both the federal district courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision. *See, e.g., Rettig v. Jefferys*, 557 F. Supp.2d 830, 841 (N.D. Ohio 2008) (citing Ohio cases); *Hooks v. Sheets*, No. 1:07-cv-520, 2008 WL 4533693 (S.D. Ohio Oct. 3, 2008) (unpublished) (Beckwith, J.); *Collins v. Warden, Chillicothe Corr. Inst.,* No. 3:06-cv-256, 2008 WL 728390 (S.D. Ohio Mar. 17, 2008) (unpublished) (Rice, J.; Merz, M.J.).[11] *See also Parker v. Warden*, No. 3:08-cv-322, 2008 WL 4547490 (S.D. Ohio Oct. 10, 2008) (unpublished)

---

[11] The circuit courts have uniformly rejected *ex post facto* challenges to the application of advisory sentencing guidelines to federal criminal defendants who committed crimes prior to *Booker. See, e.g., United States v. Barton,* 455 F.3d 649, 653-657 (6th Cir.), *cert. denied,* 127 S.Ct. 748 (2006) (*United States v. Booker,* 543 U.S. 220 (2005), does not violate *ex post facto* ) (and numerous cases cited therein).

(Rice, J.; Merz, M.J.) (finding no merit to *ex post facto* challenge where crime committed before *Foster*, but sentenced imposed after *Foster* decided). Accordingly, the undersigned concludes that petitioner's rights under the Constitution's Ex Post Facto and Due Process Clauses were not violated when the trial court resentenced petitioner to consecutive terms of imprisonment.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should **not** issue with respect to the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO RECOMMENDED.**

Date: 2/18/2009          s/Timothy S. Black
                         Timothy S. Black
                         United States Magistrate Judge

ANTHONY MASON,                           Civil Action No. 1:07-cv-1020
     Petitioner,

                                        Spiegel, J.
     vs.                              Black, M.J.

TIMOTHY BRUNSMAN, WARDEN,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).